# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

-v-

**STANLEY RAY MASON,**

        **Defendant.**

**Case No. 3:09-cr-027**

**Judge Thomas M. Rose**

---

**ENTRY AND ORDER OVERRULING MASON'S MOTION TO SUPPRESS (Doc. #17)**

---

Defendant Stanley Ray Mason ("Mason") has been indicted on three Counts. (Doc. #13.) Count One is for possession with intent to distribute marijuana. Count Two is for possession of a firearm in furtherance of a drug trafficking crime and Count Three is for a convicted felon in possession of a firearm.

Now before the Court is Mason's Motion To Suppress filed on August 11, 2009. Mason seeks to suppress the statements he made, both oral and written, at the time of his arrest. The Court conducted a hearing on Mason's Motion on October 9, 2009. On November 19, 2009, Mason filed his memorandum in support (doc. #22) and on December 9, 2009, the Government filed its opposition (doc. #24). The time has run and Mason has elected to not reply. Mason's Motion To Suppress is, therefore, ripe for decision.

Findings of relevant facts will first be set forth. This will be followed by an analysis of Mason's Motion to Suppress.

## FINDINGS OF RELEVANT FACTS

At approximately 4:25 a.m. on March 13, 2009, Mason was arrested by the Trotwood

Police Department ("TPD") for the abduction of a local woman. During the arrest, a TPD officer and two federal agents removed Mason from a car located in the parking lot of a Trotwood-area apartment complex. When removing Mason from the car, the officer and agents noticed a firearm located near the front passenger's seat which is the area where Mason had been sitting. After his arrest, Mason was transported to the TPD.

At approximately 6:10 a.m. on March 13, 2009, TPD Detective Brad Williams, ATF Special Agent James Burk and ATF Special Agent Derek Graham interviewed Mason in a conference room at the Trotwood Police Station. Mason, who was not handcuffed, was seated at the end of the long, rectangular table located in the conference room. Special Agent Burk positioned himself one or two arms lengths from Mason. Detective Williams and Special Agent Graham sat further down the table.

Before starting the interview, Special Agent Burk advised Mason of his Miranda rights using a pre-printed TPD form. In doing so, Special Agent Burk read the form to Mason and also provided Mason with an opportunity to examine the form himself. Mason indicated that he understood his rights and placed his initials next to each statement on the form. Mason signed his name underneath the following admonition printed on the TPD form: "The above statement of rights had been read to me. I understand what my rights are. I am willing to make statements and answer questions. I do not have a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me."

According to all three officers present for his interview, throughout the giving of the Miranda warnings and the interview, Mason appeared to be sober and coherent. His speech was

normal. He did not smell of alcohol or narcotics. He walked to the conference room under his own power and provided appropriate responses to the officer's questions.

Each of the three officers - Detective Williams, Special Agent Burk and Special Agent Graham - recalled some of the details of the interview differently. However, the discussion ultimately went to Mason's possession of the firearm and law enforcement's ability to obtain physical evidence, such as fingerprints or DNA, from the firearm. Mason initially denied any knowledge of the firearm.

Special Agent Burk either asked Mason if his fingerprints would be found on the firearm or expressly advised Mason that his fingerprints had already been found on the firearm depending on which officer's testimony is correct. However, Mason ultimately informed the officers that, in the days prior to his arrest, he had traded an amount of marijuana to another individual in exchange for the firearm.

The interview of Mason lasted approximately one hour. Throughout the interview, the conversation remained cordial. The parties remained calm and the officers did not threaten or otherwise attempt to intimidate Mason.

## ANALYSIS

Mason asserts that the Miranda waiver was not knowing and voluntary. He also asserts that, should the Court find the Miranda waiver to be knowing and voluntary, his incriminatory statements should be suppressed because they were involuntary.

The Fifth Amendment to the U.S. Constitution protects individuals in a criminal case from being compelled to be a witness against themselves. *United States v. Salvo*, 133 F.3d 943, 948 (6th Cir. 1998), *cert. denied*, 523 U.S. 1122 (1998). To preserve this right, a person who is

questioned by law enforcement personnel after being taken into custody must first be provided with *Miranda* warnings. *Id.* However, a defendant may waive Fifth Amendment rights and agree to speak with law enforcement personnel so long as the waiver is knowing, intelligent and voluntary. *Machacek v. Hofbauer*, 213 F.3d 947, 954 (6thCir. 2000).

Whether a waiver of Miranda rights "is knowing and intelligent is determined by the particular facts and circumstances of the case including the background, experience and conduct of the accused." *Id.*(quoting *United States v. Gaddy*, 894 F.2d 1307, 1312 (11th Cir. 1990)). When determining whether a suspect has validly waived Miranda rights, the court considers:

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it.

*Id.*(citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). However, the Fifth Amendment does not require that a suspect know and understand every possible consequence of a waiver. *Colorado v. Spring*, 479 U.S. 564, 574 (1987). What the suspect must know and understand is that he or she may choose not to talk to law enforcement officers, may choose to talk to law enforcement officers only with counsel present or may discontinue talking at any time. *Id.*

In this case, the evidence shows that Mason knowingly, intelligently and voluntarily waived his *Miranda* rights. The officers appraised Mason of his Miranda rights both verbally and in writing. He indicted his understanding of these rights by placing his initial next to each Miranda admonition contained on the TPD form and signed the bottom of this document expressly indicating that he wished to waive his rights and speak with law enforcement officers.

Mason was not under any improper physical or mental pressure when he waived his

Miranda rights. Mason was in a large conference room and was free of handcuffs. The three law enforcement officers that were present sat a comfortable distance from him. No one made any threats or offered any inducements to Mason to get him to waive his Miranda rights. Finally, at the time that Mason waived his Miranda rights, he already had considerable experience with the criminal justice system in that he was a multiple convicted felon. He already had enough experience to know that he had the right not to speak to law enforcement officers at the time of his arrest.

Mason now asserts that he was intoxicated when he waived his Miranda rights based upon testimony that he had "partied" the night before the interview. However, all three law enforcement officers that interviewed Mason presented credible testimony that Mason was sober and coherent at the time of the interview. Mason did not smell of alcohol or narcotics. He walked into the conference room under his own power. Finally, he provided appropriate responses to the questions he was asked.

In sum, Mason knowingly, intelligently and voluntarily waived his *Miranda* rights. He knowingly, intelligently and voluntarily agreed to talk to law enforcement officers.

Mason's other argument is that the statements that he made to law enforcement officers should be suppressed because he did not make them voluntarily. Specifically, Mason contends that a false claim by one of the officers interviewing him that his fingerprints had already been located on the firearm invalidated his ensuing confession.

The test for the voluntariness of a confession under the Due Process Clause of the U.S. Constitution involves three factors. *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988), *cert. denied*, 490 U.S. 1020 (1989). The threshold determination is whether the police extorted the

confession by coercive activity. *Id.* Once the police activity is determined to be objectively coercive, the petitioner's subjective state of mind is examined to determine whether the coercion was sufficient to overbear the will of the accused. *Id.* Finally, the petitioner must prove that his or her will was overborne because of the coercive policy activity. *Id.*

When determining whether a confession has been obtained by unconstitutional means, the court considers whether a defendant's will was "overborne" in a particular set of circumstances. *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994), *cert. denied*, 515 U.S. 1145 (1995). Factors considered include the age, education and intelligence of the accused; whether the accused had been informed of his constitutional rights; the length of the questioning; and the use of physical punishment such as the deprivation of food or sleep. *Id.* However, there is nothing inherently wrong with creating a favorable climate for confession. *Id.* at 1069 (citing *Hawkins v. Lynaugh*, 844 F.2d 1132, 1140 (5th Cir. 1988), *cert. denied*, 488 U.S. 900 (1988)). To that end, neither mere emotionalism and confusion nor mere trickery will alone necessarily invalidate a confession. *Id.*

Mason's confession regarding the firearm will not be suppressed. The totality of the circumstances show that Mason's confession was voluntary. Telling Mason that his fingerprints were found on the firearm, standing alone, did not render his subsequent statement regarding the firearm unconstitutional. Mason had already had ample experience with the criminal justice system. He was properly advised of his *Miranda* rights before the interview. The interview lasted approximately one to one and one half hours in a large conference room. No one made promises or threats to Mason to obtain his statements. Under these circumstances, it cannot be said that Mason's will was overborne.

Mason's Motion To Suppress (doc. #17) is OVERRULED. Mason knowingly, intelligently and voluntarily waived his *Miranda* rights. Further, falsely telling Mason that his fingerprints had been found on the firearm was not enough to overbear Mason's will and render his statement involuntary.

**DONE** and **ORDERED** in Dayton, Ohio this Twenty-Second day of December, 2009.

**s/Thomas M. Rose**
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record